UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI BUCKSHAW, as the Conservator of
RYAN BUCKSHAW, a legally incapacitated
person,

        Plaintiff,

v.                                      Case No. 11-11918
                                      Honorable Patrick J. Duggan

OFFICER DANIEL WOODWARD,
OFFICER ANDREW CURRY, and
CANTON TOWNSHIP,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff filed this action against Defendants pursuant to 42 U.S.C. § 1983, claiming that Defendants violated Ryan Buckshaw's civil rights when they stopped him to investigate a disturbance and then released him and allowed him to walk across a busy intersection where he was hit by a motorist. On December 14, 2011, Defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. On February 2, 2012, the parties stipulated to the dismissal with prejudice of Defendants Officer Andrew Curry and Canton Township. (Doc. 25.) The motion has been fully briefed and, on January 13, 2012, this Court issued a notice informing the parties that it is dispensing with oral argument with respect to the motion pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court grants summary judgment in favor of remaining Defendant Officer Daniel Woodward ("Officer

Woodward").

I.  **Factual Background**

On May 4, 2008, shortly before 2:00 a.m., Officer Woodward was parked in his patrol car at a Valero gas station on the northeast corner of Ford Road and Haggerty Road in Canton, Michigan, when he heard someone yelling across the street in the parking lot of a bar. Officer Woodward observed one individual walk back into the bar and another individual walking from the area, proceeding westbound along the Ford Road sidewalk. Officer Woodward drove to the parking lot of the bar to investigate and then returned to the Valero station, when he again heard a male individual yell from the parking lot of the bar. In response, Officer Woodward again drove across Ford Road.

Officer Woodward made contact with the individual, Ryan Buckshaw ("Mr. Buckshaw"), as Mr. Buckshaw walked westbound along the sidewalk on the south side of Ford Road. When Officer Woodward approached him, Mr. Buckshaw was crossing the driveway of a BP gas station located at the southeast corner of Ford Road and Haggerty Road. Within seconds, Officer Andrew Curry arrived at the scene in his patrol car.

Officer Woodward asked Mr. Buckshaw if he had been in a fight and Mr. Buckshaw responded a little with his brother Matthew, but nothing physical. (Woodward Dep. at 24.) Officer Woodward obtained identifying information for Mr. Buckshaw and then returned to his patrol car to run Mr. Buckshaw's and his brother's names in the Law Enforcement Information Network ("LIEN") to see if they were wanted or had any warrants. (*Id*. at 31.) Mr. Buckshaw's name came up negative, although his brother had

2

an outstanding warrant out of Bloomfield Hills, Michigan. (*Id.*)

While Officer Woodward was running the LIEN check, Officer Curry spoke with Mr. Buckshaw. Mr. Buckshaw expressed some concern to Officer Curry that he would be going to jail. (Curry Dep. at 15.) Officer Curry asked Mr. Buckshaw why, and Mr. Buckshaw mentioned "being drunk and disorderly." (*Id.*) According to Officer Curry, he asked Mr. Buckshaw if he thought he was drunk and disorderly and Mr. Buckshaw said "no." (*Id.*)

In fact, neither Officer Woodward nor Officer Curry smelled any alcohol on Mr. Buckshaw, although Mr. Buckshaw did inform the officers that he had been drinking. (*Id.*; Woodward Dep. at 43; Defs.' Mot. Ex. A.) According to Officer Woodward, Mr. Buckshaw "didn't exhibit any signs of being impaired by drugs, alcohol, or any other things that would impair his ability to function." (Woodward Dep. at 43.) Officer Woodward reported that Mr. Buckshaw was cooperative, coherent, and helpful. (Defs.' Mot. Ex. A.) This is confirmed by the videotape of the encounter captured from Officer Woodward's patrol car and attached to Defendants' motion for summary judgment. (Defs.' Mot. Ex. C.) In the videotape, that includes an audio recording of the encounter, Mr. Buckshaw does not exhibit any signs of being intoxicated (such as slurring his speech or staggering) and he has no difficulty answering the officers' questions, providing addresses for himself, his girlfriend, or his brother, recalling his girlfriend's address, or spelling his and his girlfriend's names. (*Id.*)

In response to Mr. Buckshaw's concern that he was going to jail, Officer

Woodward explained that he was not going to arrest him simply for yelling in a parking lot, as that did not meet the threshold of disturbing the peace. (Woodward Dep. at 35.) Officer Woodward asked to speak with Mr. Buckshaw's girlfriend, to confirm that there was no physical violence involved in the altercation at her house and to determine whether Mr. Buckshaw could return there, to which she said yes and that there were no problems. (Defs.' Mot. Ex. A.)

Officer Woodward eventually told Mr. Buckshaw that he was all set to go. (*Id.*) When Mr. Buckshaw then asked Officer Woodward for a ride across the street to get cigarettes, Officer Woodward responded "no." (Woodward Dep. at 41.) Officer Woodward told Mr. Buckshaw that he could walk across the street, but to use the crosswalk and not get hit by a car. (Defs.' Mot. Ex. C.) Mr. Buckshaw then walked to the corner. (*Id.*) When the in-car video ends, he is waiting to cross Ford Road. (*Id.*)

Minutes later, as Mr. Buckshaw crossed Ford Road, he was struck by an automobile and was severely injured. Ford Road is a heavily traveled road. (Woodward Dep. at 42.) It has a posted speed limit of forty-five miles per hour, five through lanes, and two turn lanes at the intersection with Haggerty Road where Mr. Buckshaw was struck. (Pl.'s Resp. Ex. E at 1.) There are traffic control devices at the intersection, as well as pedestrian crossings. (*Id.*)

Mr. Buckshaw was transported by Med-Flight to the University of Michigan Hospital for treatment. Apparently, his blood alcohol content was .18 upon arrival. (Pl.'s Resp. Ex. H.) Mr. Buckshaw suffered a severe brain injury as a result of the accident.

4

(*Id.* Ex. J.)  According to his treating neuropsychologist Ronald Baumanis, PhD., he therefore has no independent recollection of the events of May 4, 2008.  (*Id*. Ex. L.)  According to Plaintiff, "[Mr.] Buckshaw is not mentally competent to testify as to any of the facts which give rise to this action."  (Pl.'s Resp. Br. at 4.)  He has been declared a "Legally Incapacitated Person" by the Wayne and Washtenaw County Probate Courts and Plaintiff, his mother, was appointed his Conservator and Guardian.  (Pl.'s Resp. Ex. K.)

## II.     Standard for Summary Judgment

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact."  *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

5

106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

### III.   Applicable Law and Analysis

Plaintiff contends that Officer Woodward violated Mr. Buckshaw's Fourteenth Amendment substantive due process rights. Generally, the Due Process Clause does not obligate the State to protect individuals from private acts of violence. *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195, 109 S. Ct. 998, 1003 (1989). There are two recognized exceptions to this rule: the "custody exception" and the "state-created danger exception." *See Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005) (citing *DeShaney*, 489 U.S. at 199-201, 109 S. Ct. at 1005-06). Plaintiff relies on the latter exception in this case.[1]

To show a state-created danger, a plaintiff must present evidence of:

(1) an affirmative act by the [defendant] that creates or increases a risk that the [plaintiff] would be exposed to "private acts of violence," (2) a special danger to the [plaintiff] such that the [defendant's] acts placed the [plaintiff] specifically at risk, as distinguished from a risk that affects the public at

---

[1] Plaintiff indicates in response to Defendants' motion that she is not relying on the custody exception as Mr. Buckshaw's injuries occurred after he was released from the officer's custody. (Pl.'s Resp. Br. at 6 n.4.)

large, and (3) that the [defendant] knew or should have known that [his or
her] actions specifically endangered the [plaintiff].

*Jackson*, 429 F.3d at 591 (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir.1998)).  Liability under the state-created danger exception is predicated on the state's "'affirmative acts which work to [the] plaintiffs' detriments in terms of exposure to danger.'"  *Sargi v. Kent Cnty. Bd. of Educ.*, 70 F.3d 907, 913 (6th Cir. 1995) (quoting *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1374 (3d Cir. 1992)).  The "failure to act is not an affirmative act under the state-created danger theory."  *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

Plaintiff contends that Officer Woodward "took the following affirmative acts" that "increased the risk that Ryan Buckshaw would be exposed to an act of violence by a third party– i.e. being struck by a car operated by a driver on Ford Road":

1. Affirmatively refused to arrest Plaintiff for being drunk and disorderly despite the statutory mandate contained in MCL 333.6501(1);

2. Affirmatively granted Plaintiff's request to cross Ford Road;

3. Affirmatively instructed Plaintiff where to cross Ford Road;

4. Affirmatively refused Plaintiff's request for a ride across Ford Road.

(Pl.'s Resp. Br. at 7-8.)  The first and fourth "acts" are not "affirmative acts."  They represent quintessential examples of a "failure to act."[2]  The second and third acts did not

---

[2]With regard to Officer Woodward's refusal to arrest Mr. Buckshaw pursuant to Michigan Compiled Law § 333.6501(1), the evidence presents no cause (much less probable cause) for the officer to have done so.  Section 333.6501(1) provides in relevant

expose Mr. Buckshaw to any danger to which he was not already exposed. In other words, by telling Mr. Buckshaw that he could cross Ford Road but that he should use the crosswalk (notably where there was a pedestrian crossing control device), Officer Woodward did not expose Mr. Buckshaw to a "special danger," distinct "from a risk that affects the public at large."

Plaintiff emphasizes the dangerousness of the Ford and Haggerty intersection where Mr. Buckshaw was struck, particularly on a weekend at 2:00 a.m. ("last call" in Michigan). However, the intersection was no more dangerous to Mr. Buckshaw than any other person and it was not made more dangerous by any affirmative act of Officer Woodward. No facts presented could lead a jury to find that Officer Woodward knew or should have known that Mr. Buckshaw was at greater risk than the public at large of being injured while crossing the intersection– much less that anything *he (Officer Woodward) did* specially endangered Mr. Buckshaw. As such, the state-created danger

---

part: "An individual who appears to be incapacitated in a public place shall be taken into protective custody by a law enforcement officer and taken to an approved service program, or to an emergency medical service, or to a transfer facility pursuant to subsection (4) for subsequent transportation to an approved service program or emergency medical service . . ." Mich. Comp. Laws § 333.6501(1). Under Michigan law, a person is deemed "incapacitated" where the "individual, as a result of the use of alcohol, is unconscious or has his or her mental or physical functioning so impaired that he or she either poses an immediate and substantial danger to his or her own health and safety or is endangering the health and safety of the public." *Id*. § 333.6104(3). Had the officers arrested Mr. Buckshaw, this Court likely would be deciding a § 1983 action based on an unlawful arrest.

exception does not apply in this case and Officer Woodward is entitled to summary judgment.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment is **GRANTED**.

Date: February 28, 2012                    s/PATRICK J. DUGGAN
                                           UNITED STATES DISTRICT JUDGE

Copies to:
Noah S. Hurwitz, Esq.
James R. Acho, Esq.